## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
## HARTFORD DIVISION

| | |
|---|---|
| _____ ) | CHAPTER 7 |
| IN RE: ) | |
| ) | |
| WALNUT HILL, INC. ) | CASE NO.:  16-20960 (JJT) |
| ) | |
| Debtor. ) | |
| ) | |
| _____ ) | |
| BONNIE C. MANGAN, Chapter 7 Trustee for ) | |
| WALNUT HILL INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. Pro. No. _____ |
| ) | |
| AMERICAN EXPRESS COMPANY, ) | |
| AMERICAN EXPRESS TRAVEL RELATED ) | |
| SERVICES COMPANY, INC., AMERICAN ) | |
| EXPRESS BANK, FSB, AMERICAN ) | |
| EXPRESS CENTURION BANK, GOLDEN ) | |
| LIVING CENTERS LLC, RICHARD ) | |
| PLATSCHEK, SOLOMON ABRAMCZYK, ) | |
| ALEXANDER PLATSCHEK, GOLDIE ) | |
| PLATSCHEK, DAVID ROSNER, ROBERT ) | |
| SCHUCK, WALNUT HILL MANAGEMENT ) | |
| COMPANY LLC, AND TYTY LLC ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

Bonnie Mangan, Chapter 7 Trustee (the "Trustee") of Walnut Hill Inc. ("Walnut Hill" or

the "Debtor"), in support of this complaint (the "Complaint"), hereby alleges:

## PRELIMINARY STATEMENT

Based upon a review of (i) statements from one of the Debtor's accounts with People's

United Bank, and (ii) a review of American Express statements for four (4) credit card accounts,

the Trustee has determined that Walnut Hill Management Company, LLC, Richard Platschek,

TYTY, LLC, and/or Solomon Abramczyk fraudulently transferred a total sum of **$903,392.21**

from one of the Debtor's People's United Bank accounts to American Express to pay obligations

that the Debtor did not owe on the four credit card accounts, which belonged to third parties.

## JURISDICTION, VENUE AND NATURE OF THIS PROCEEDING

1.      On June 14, 2016, (the "Petition Date"), the Debtor filed a voluntary petition for

relief under Chapter 7 of the United States Bankruptcy Code.

2.      On or about June 14, 2016, the Trustee was appointed Chapter 7 Trustee of the

Debtor.

3.      This Complaint initiates an adversary proceeding pursuant to §§ 105, 502(d), 510,

544, 546, 548, 550, and 551 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the

"Bankruptcy Code"), and Fed. R. Bankr. P. 7001(1).  The Complaint seeks: (1) to avoid and

recover intentional and constructive fraudulent transfers of the Debtor's property made to or for

the benefit of certain defendants; (2) to disallow any claims of the defendants against the Debtor

and the Estate; (3) to subordinate any allowed claims of the defendants against the Debtor and

the Estate to the claims of all other creditors of the Estate; (4) an injunction against the

defendants prohibiting them from further transferring or disposing of any of the property

transferred; and (5) other legal and equitable relief.

4.      This Court has jurisdiction, under 28 U.S.C. §§ 157 and 1334(b), of the subject

matter of this proceeding because the claims asserted herein arise under Chapter 7 of the

Bankruptcy Code and are related to a case pending under the Bankruptcy Code in the United

States Bankruptcy Court for the District of Connecticut, Hartford Division (the "Bankruptcy

Court").

5.      This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (E), (H), and (O).

6.      Pursuant to 28 U.S.C. §§ 1391 and 1409(a), venue of this adversary proceeding in the Bankruptcy Court is proper because the Debtor's case is pending in this district and division.

## PARTIES

7.      The Trustee is the duly appointed Chapter 7 Trustee in this Chapter 7 case.

8.      Defendant, American Express Company ("AMEX"), is a New York corporation with a place of business in New York, New York.

9.      Defendant, American Express Travel Related Services Company, Inc. ("TRS"), is a New York corporation with a place of business in New York, New York.

10.      Defendant, American Express Bank, FSB ("FSB"), is a federal savings bank with a place of business in New York, New York.

11.      Defendant, American Express Centurion Bank ("Centurion"), is a Utah-chartered industrial bank with a place of business in New York, New York.

12.      AMEX, TRS, FSB and Centurion are each individually and collectively referred to herein as "American Express."

13.      Defendant, Golden Living Centers, LLC ("Golden Living"), is a New York limited liability company with a place of business in Buffalo, New York.

14.      Defendant, Richard Platschek ("R. Platschek"), is an individual with a residence in Lawrence, New York.

15.      Defendant, Solomon Abramczyk ("Abramczyk"), is an individual with a residence in Brooklyn, New York.

3

16.     Defendant, Alexander Platschek ("A. Platschek"), is an individual with a residence in Brooklyn, New York.

17.     Defendant, Goldie Platschek ("G. Platschek"), is an individual with a residence in Lawrence, New York.

18.     Defendant, David Rosner ("Rosner"), is an individual with a residence in Buffalo, New York and/or West Seneca, New York.

19.     Defendant, Robert Schuck ("Schuck"), is an individual with a residence in Brooklyn, New York.

20.     Defendant, Walnut Hill Management Company, LLC ("WHMC"), is a Connecticut limited liability company with a place of business in Brooklyn, New York.

21.     Defendant, TYTY, LLC ("TYTY"), is a New York limited liability company with a place of business at 6085 Strickland Avenue, Brooklyn, New York.

## FACTS COMMON TO ALL COUNTS

### I.     Background Information

22.     The Debtor was a corporation that operated a skilled nursing/chronic and convalescent nursing home facility located at premises known as 55 Grand Street, New Britain, Connecticut.

23.     Non-party Walnut Hill Holdings, LLC ("WH Holdings") is a Connecticut limited liability company with a place of business formerly located at 55 Grand Street, New Britain, Connecticut, and was the 100% owner of the stock of the Debtor.

24.     For years, the Debtor was owned by WH Holdings and was operated by Dr. Donald Griggs ("Dr. Griggs").

4

25.     Upon information and belief, by November 2012, at the latest, Dr. Griggs's mental capacities were diminished, and he was showing signs of dementia.

26.     In or about the summer of 2012, pursuant to a consent order issued on August 21, 2012, by the State of Connecticut, a temporary administrator, Rosemarie Clark ("Clark"), was installed at the Debtor to supervise the Debtor's operations.

27.     In or about that time, Dr. Griggs decided to seek a buyer for the Debtor.

28.     By October 2012, Dr. Griggs and R. Platschek initiated discussions pursuant to which R. Platschek, or an entity controlled by him, would acquire the stock of the Debtor.

29.     By late 2012, Dr. Griggs and R. Platschek agreed upon a series of transactions pursuant to which R. Platschek, through an entity created by him, would ultimately acquire the stock of the Debtor.

30.     On November 7, 2012, R. Platschek formed WHMC and registered the entity with the Connecticut Secretary of State.

31.     By virtue of a *Management Agreement*, dated January 7, 2013 (the "Management Agreement"), signed by Dr. Griggs, individually, the Debtor, and WHMC, WHMC agreed to provide management services to the Debtor.

32.     Pursuant to the Management Agreement, WHMC was to perform all billing, collection and financial management activities concerning the Debtor, including processing and paying all accounts payable, paying all rents, insurance, applicable taxes, and operating costs as required by any lease entered into by the Debtor, establishing and maintaining bank accounts on behalf of the Debtor, and providing all necessary bookkeeping and accounting for the Debtor's operations.

33.     Abramczyk formed TYTY on January 15, 2013, approximately one week after WHMC executed the Management Agreement.

34.     R. Platschek considers himself to be Abramczyk's partner and, at all times relevant herein, R. Platschek maintained a desk at TYTY's offices and/or shared office space with Abramczyk.

35.     R. Platschek established a checking account at People's United Bank ("PUB") with an account number ending in 4623 in the name of the Debtor (the "PUB Account") on or about January 17, 2013, shortly after WHMC began its tenure as the Debtor's management company.

36.     WHMC allegedly subcontracted with TYTY to process and pay the Debtor's accounts payable, including the payment of rent, insurance, taxes, operating costs, and expenses.

37.     At all times relevant herein, WHMC, acting by and through R. Platschek, provided TYTY with a signature stamp bearing the name "Donald Griggs," authorized TYTY to issue checks from the Debtor's bank account(s), and authorized TYTY to initiate ACH and wire transfers from the Debtor's bank account(s), including transfers from the PUB Account.

38.     WHMC, acting by and through R. Platschek, failed to affirmatively review and approve transfers from the Debtor's bank accounts that were made by TYTY.

39.     At all times relevant herein, WHMC, acting by and through R. Platschek, also issued checks from the Debtor's bank account(s), initiated transfers from the Debtor's bank accounts, and authorized TYTY to initiate ACH and wire transfers from the Debtor's bank account(s), including transfers to WHMC, TYTY, and R. Platschek.

40.     At all times relevant herein, WHMC transferred funds of the Debtor to pay debts that the Debtor did not owe.

41.     At all times relevant herein, WHMC allowed TYTY to transfer funds of the Debtor to pay debts that the Debtor did not owe.

42.     Upon information and belief, no written agreement memorializes any agreement between WHMC and TYTY concerning the Debtor.

43.     At all relevant times herein, the Debtor did not have a credit card or account with American Express.

44.     Based upon a review of the Debtor's PUB Account statements and a review of American Express's records for four credit card accounts (defined below as the Gold Account and the Platinum Accounts), the Trustee has determined that WHMC, R. Platschek, TYTY, and/or Abramczyk fraudulently transferred **$903,392.21** of the Debtor's funds, within the four (4) years prior to the Petition Date, to American Express to pay obligations that the Debtor did not owe.  These transfers were made for the benefit of WHMC, R. Platschek, TYTY, Abramczyk, and/or their family, friends, and business associates.

II.     **The Debtor Was Insolvent at the Time of the Fraudulent Transfers.**

45.     The Debtor was insolvent during all times relevant herein, as evidenced by, *inter alia*, the following:

a.  A review of the tax returns filed on behalf of WH Holdings, which owns 100% of the stock of the Debtor, reveals that the Debtor had a negative net worth as of December 31, 2012;

b.  Clark, the temporary administrator appointed by the State of Connecticut, testified at her Rule 2004 examination that soon after she started working at the Debtor in the fall of 2012, she had to negotiate payments with various creditors to ensure that the facility continued to operate and provide services to its patients;

c.  Tax returns prepared, but not filed, for WH Holdings indicate that the Debtor's net worth had decreased as of December 31, 2013;

d.  On August 21, 2014, TD Bank filed a foreclosure action against the Debtor, Walnut Hill Real Estate LLC, WH Holdings, Dr. Griggs, and WHMC, Case No.

HHB-CV-14-6026483, claiming that payments had not been made on two promissory notes totaling approximately $9,000,000;

e.  Various collection actions were filed in 2013 and 2014 by persons and entities who had provided goods and/or services to the Debtor;

f.  The State of Connecticut issued a tax warrant in the amount of about $124,000.00 for the Debtor's failure to pay withholding taxes from June 30, 2014 to March 31, 2015;

g.  A tax statement from the City of New Britain for three years of delinquent personal property taxes owed by the Debtor indicates that the taxes had not been paid for the years 2011, 2012, and 2013;

h.  A water/sewer lien in the amount of approximately $27,000 was recorded on the City of New Britain land records for 55 Grand Street, New Britain, Connecticut on April 30, 2014; and

i.  Numerous checks issued by the Debtor were returned for insufficient funds between March 2013 and December 2014.

46.     In fact, the Debtor has been in a distressed financial condition since as early as 2012 and continued to have financial difficulties until it filed for Chapter 7 bankruptcy protection.

47.     In short, the Debtor was insolvent and was no longer able to pay its debts as they came due on the dates that each of the subject fraudulent transfers were made.

**III.     R. Platschek Is Personally Liable for WHMC's Actions and/or Omissions.**

48.     Platschek personally committed, participated in, or directed the commission of the acts of WHMC that are alleged herein.

49.     At all times relevant herein, R. Platschek maintained complete domination of the finances, policies, and business practices of WHMC in all respects, including the transactions that are the subject of this Complaint, so that WHMC had no separate mind, will or existence of its own.

50.    R. Platschek maintained and used such control to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or to commit a dishonest or unjust act in contravention of the Debtor's legal rights.

51.    R. Platschek's aforesaid control over WHMC and breach of duty to the Debtor proximately caused the injuries and unjust losses sustained by the Debtor, as alleged in this Complaint.

52.    At all times relevant herein, there was such a unity of interest and ownership between WHMC and R. Platschek that the independence of WHMC had in effect ceased or had never begun.

53.    An adherence to the fiction that WHMC was an entity with an identity separate and apart from R. Platschek would serve only to defeat justice and equity by permitting R. Platschek to escape liability arising out of the operation of WHMC and unjustly benefit himself, his friends, family, and business associates.

**IV.    Abramczyk Is Personally Liable for TYTY's Actions and/or Omissions.**

54.    Abramczyk personally committed, participated in, or directed the commission of the acts of TYTY that are alleged herein.

55.    At all times relevant herein, Abramczyk maintained complete domination of the finances, policy, and business practices of TYTY in all respects, including the transactions that are the subject of this Complaint, such that TYTY had no separate mind, will or existence of its own.

56.    Abramczyk maintained and used such control to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or to commit a dishonest or unjust act in contravention of the Debtor's legal rights.

57.    Abramczyk's aforesaid control over TYTY and its breach of duty to the Debtor proximately caused the injuries and unjust losses sustained by the Debtor, as alleged in this Complaint.

58.    At all times relevant herein, there was such a unity of interest and ownership between Abramczyk and TYTY that the independence of TYTY had in effect ceased or had never begun.

59.    An adherence to the fiction that TYTY was an entity with an identity separate and apart from Abramczyk would serve only to defeat justice and equity by permitting Abramczyk to escape liability arising out of the operations of TYTY and unjustly benefit himself, his friends, and business associates.

## COUNT ONE
### INTENTIONAL FRAUDULENT TRANSFER
### 11 U.S.C. §§ 548(a)(1)(A), 550 AND 551
### (AMERICAN EXPRESS and THE GOLD ACCOUNT OBLIGORS)

60.    The Trustee incorporates all preceding paragraphs as if fully re-alleged herein.

61.    American Express received transfers from the PUB Account to pay charges incurred on an account in the name of Golden Living with an account number ending in 61001 (the "Gold Account"), in the amount of **$379,975.34** within the four (4) years prior to the Petition Date.

62.    In addition to Golden Living, Rosner and R. Platschek were obligors on the Gold Account (the "Gold Account Obligors").

63.    Upon information and belief, at all relevant times herein, Golden Living managed at least two skilled nursing facilities located in or near Buffalo, NY.

64.    Upon information and belief, at all relevant times herein, R. Platschek and Abramczyk had ownership interests in Golden Living.

10

65.    Upon information and belief, at all relevant times herein, the Gold Account Obligors had the following Gold credit cards with American Express:

    a.   Rosner – card number ending in 2-61001; and

    b.   R. Platschek – card number ending in 2-61019.

66.    Rosner was never employed by the Debtor and never provided services to the Debtor.

67.    Upon information and belief, R. Platschek and Rosner were business associates.

68.    At all relevant times herein, the Debtor did not incur any obligations on the Gold Account.

69.    Although the Debtor never had a credit card or account with American Express, the Debtor made the following transfers to American Express to pay the obligations incurred by the Gold Account Obligors on the Gold Account within two (2) years of the Petition Date:

|   | Gold Account Ending In: | Transfer Date | Amount of Transfer from the Debtor |
|---|---|---|---|
| 1 | 2-61001 | 6/25/2014 | $ 39,726.25 |
| 2 | 2-61001 | 7/17/2014 | $ 20,000.00 |
| 3 | 2-61001 | 7/28/2014 | $ 20,000.00 |
| 4 | 2-61001 | 8/19/2014 | $ 35,745.00 |
| 5 | 2-61001 | 8/27/2014 | $ 22,122.04 |
| 6 | 2-61001 | 10/20/2014 | $ 44,500.00 |
| 7 | 2-61001 | 11/14/2014 | $ 44,125.26 |
| 8 | 2-61001 | 12/26/2014 | $ 548.87 |
|   |   | TOTAL: | $ 226,767.42 |

(collectively, the "Gold Account Two-Year Transfers").

70.    The Gold Account Two-Year Transfers were made to or for the benefit of American Express and the Gold Account Obligors.

71.     WHMC, R. Platschek, Abramczyk and/or TYTY caused the Debtor to make the Gold Account Two-Year Transfers from the Debtor's PUB Account.

72.     The Gold Account Two-Year Transfers were made with the actual intent to hinder, delay, or defraud some or all of the Debtor's then existing and future creditors.

73.     The Gold Account Two-Year Transfers constitute fraudulent transfers avoidable by the Trustee pursuant to § 548(a)(1)(A) of the Bankruptcy Code and are recoverable from American Express and/or the Gold Account Obligors pursuant to § 550(a) of the Bankruptcy Code.

74.     As a result of the foregoing, pursuant to §§ 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code, the Trustee is entitled to a judgment: (a) avoiding and preserving the Gold Account Two-Year Transfers; (b) directing that the Gold Account Two-Year Transfers be set aside; (c) recovering the Gold Account Two-Year Transfers, or the value thereof, from American Express and/or from the Gold Account Obligors for the benefit of the Debtor's Estate; and (d) an injunction against American Express and the Gold Account Obligors prohibiting them from further disposing of the property transferred.

**COUNT TWO**
**CONSTRUCTIVE FRAUDULENT TRANSFER**
**U.S.C. §§ 548(a)(1)(B), 550 AND 551**
**(AMERICAN EXPRESS and THE GOLD ACCOUNT OBLIGORS)**

75.     The Trustee incorporates all preceding paragraphs as if fully re-alleged herein.

76.     The Gold Account Two-Year Transfers were made on or within two (2) years of the Petition Date.

77.     The Debtor did not receive reasonably equivalent value in exchange for the Gold Account Two-Year Transfers.

78.     At the time of the Gold Account Two-Year Transfers, the Debtor was insolvent, or became insolvent, as a result of the Gold Account Two-Year Transfers.

79.     At the time of the Gold Account Two-Year Transfers, the Debtor was engaged in a business or a transaction, or was about to engage in a business or a transaction, for which any property remaining with the Debtor was unreasonably small capital.

80.     At the time of the Gold Account Two-Year Transfers, the Debtor intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

81.     The Gold Account Two-Year Transfers constitute constructively fraudulent transfers avoidable by the Trustee pursuant to §§ 548(a)(1)(B) and 551 of the Bankruptcy Code and are recoverable from American Express and/or the Gold Account Obligors pursuant to § 550(a) of the Bankruptcy Code.

82.     As a result of the foregoing, pursuant to §§ 548(a)(1)(B), 550(a), and 551 of the Bankruptcy Code, the Trustee is entitled to a judgment: (a) avoiding and preserving the Gold Account Two-Year Transfers; (b) directing that the Gold Account Two-Year Transfers be set aside; (c) recovering the Gold Account Two-Year Transfers, or the value thereof, from American Express and/or the Gold Account Obligors for the benefit of the Debtor's Estate; and (d) an injunction against American Express and the Gold Account Obligors prohibiting them from further disposing of the property transferred.

**COUNT THREE**
**CUFTA INTENTIONAL FRAUDULENT TRANSFER**
**11 U.S.C. §§ 544(b)(1), 550(a) AND 551 AND**
**CONN. GEN. STAT. §§ 52-552e(a)(1) AND 52-552h(a)**
**(AMERICAN EXPRESS and THE GOLD ACCOUNT OBLIGORS)**

83.     The Trustee incorporates all preceding paragraphs as if fully re-alleged herein.

84.     The Debtor made the following transfers to American Express to pay the

obligations incurred by the Gold Account Obligors on the Gold Account within four (4) years of

the Petition Date:

|    | Gold Account Ending In: | Transfer Date | Amount of Transfer from the Debtor |
|----|-------------------------|---------------|------------------------------------|
| 1  | 2-61001 | 6/25/2013  | $      13,000.00 |
| 2  | 2-61001 | 7/16/2013  | $      10,588.20 |
| 3  | 2-61001 | 2/14/2014  | $       6,766.37 |
| 4  | 2-61001 | 2/20/2014  | $      10,145.81 |
| 5  | 2-61001 | 3/20/2014  | $      16,924.81 |
| 6  | 2-61001 | 4/11/2014  | $      11,945.49 |
| 7  | 2-61001 | 4/28/2014  | $      18,930.30 |
| 8  | 2-61001 | 5/27/2014  | $      42,557.42 |
| 9  | 2-61001 | 6/13/2014  | $      22,349.52 |
| 10 | 2-61001 | 6/25/2014  | $      39,726.25 |
| 11 | 2-61001 | 7/17/2014  | $      20,000.00 |
| 12 | 2-61001 | 7/28/2014  | $      20,000.00 |
| 13 | 2-61001 | 8/19/2014  | $      35,745.00 |
| 14 | 2-61001 | 8/27/2014  | $      22,122.04 |
| 15 | 2-61001 | 10/20/2014 | $      44,500.00 |
| 16 | 2-61001 | 11/14/2014 | $      44,125.26 |
| 17 | 2-61001 | 12/26/2014 | $         548.87 |
|    |         | **TOTAL:** | **$      379,975.34** |

(collectively, the "Gold Account Four-Year Transfers").

85.     The Gold Account Four-Year Transfers were made to or for the benefit of

American Express and the Gold Account Obligors.

86.     The Gold Account Four-Year Transfers were made with the actual intent to hinder, delay, or defraud some or all of the Debtor's then existing and future creditors.

87.     The Gold Account Four-Year Transfers constituted fraudulent transfers within the meaning of, and in violation of, the Connecticut Uniform Fraudulent Transfer Act ("CUFTA"), Conn. Gen. Stat. § 52-552e(a)(1).

88.     As a direct and proximate result of the Gold Account Four-Year Transfers, the Debtor, its Estate, and its creditors have been caused to suffer money damages.

89.     At all times relevant herein, there have been creditors who have held and still hold matured or unmatured unsecured claims against the Debtor that were and are allowable under § 502 of the Bankruptcy Code or that were and are not allowable only under § 502(e).

90.     As a result of the foregoing, the Trustee is entitled to a judgment: (a) avoiding and preserving the Gold Account Four-Year Transfers; (b) directing that the Gold Account Four-Year Transfers be set aside; (c) recovering the Gold Account Four-Year Transfers, or the value thereof, pursuant to 11 U.S.C. §§ 550 and 551 and Conn. Gen. Stat. § 52-552h(a), from American Express and/or the Gold Account Obligors for the benefit of the Debtor's Estate; and (d) an injunction against American Express and the Gold Account Obligors prohibiting them from further disposing of the transferred property.

### COUNT FOUR
### CUFTA CONSTRUCTIVE FRAUDULENT TRANSFER
### CONN. GEN. STAT. §§ 52-552e(a)(2) AND 52-552f(a)
### (AMERICAN EXPRESS and THE GOLD ACCOUNT OBLIGORS)

91.     The Trustee incorporates all preceding paragraphs as if fully re-alleged herein.

92.     The Gold Account Four-Year Transfers were made on or within four (4) years of the Petition Date.

93.     The Debtor did not receive reasonably equivalent value in exchange for the Gold Account Four-Year Transfers.

94.     At the time of the Gold Account Four-Year Transfers, the Debtor was insolvent, or became insolvent, as a result of the Gold Account Four-Year Transfers.

95.     At the time of the Gold Account Four-Year Transfers, the Debtor was engaged, or was about to engage, in a business or transaction, for which any property remaining with the Debtor was unreasonably small capital.

96.     At the time of the Gold Account Four-Year Transfers, the Debtor intended to incur, or believed or reasonably should have believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

97.     The Gold Account Four-Year Transfers constitute fraudulent transfers within the meaning of, and in violation of, CUFTA, Conn. Gen. Stat. §§ 52-552e(a)(2) and/or 52-552f(a).

98.     As a direct and proximate result of the Gold Account Four-Year Transfers, the Debtor, its Estate, and its creditors have been caused to suffer money damages.

99.     As a result of the foregoing, the Trustee is entitled to a judgment: (a) avoiding and preserving the Gold Account Four-Year Transfers; (b) directing that the Gold Account Four-Year Transfers be set aside; (c) recovering the Gold Account Four-Year Transfers, or the value of thereof, from American Express and/or the Gold Account Obligors for the benefit of the Debtor's Estate pursuant to 11 U.S.C. §§ 550 and 551 and state law; and (d) an injunction against American Express and the Gold Account Obligors prohibiting them from further disposing of the property transferred.

## COUNT FIVE
## INTENTIONAL FRAUDULENT TRANSFER
## 11 U.S.C. §§ 548(a)(1)(A), 550 AND 551
## (AMERICAN EXPRESS and THE PLATINUM ACCOUNT OBLIGORS)

100.    The Trustee incorporates all preceding paragraphs as if fully re-alleged herein.

101.    American Express also received transfers from the PUB Account to pay charges incurred on three additional credit card accounts in the name of Golden Living with account numbers ending in 72005, 73003, and 74001 (collectively, the "Platinum Accounts"), in the total amount of **$523,416.87** within the four (4) years prior to the Petition Date.

102.    In addition to Golden Living, Rosner, Abramczyk, A. Platschek, G. Platschek, R. Platschek, and Schuck were obligors on the Platinum Accounts (collectively, the "Platinum Account Obligors").

103.    Upon information and belief, at all relevant times herein, the Platinum Account Obligors had the following Platinum credit cards with American Express:

      a.    Rosner – card numbers ending in 72005, 73003, and 74001;

      b.    R. Platschek – card numbers ending in 71015 and 72013;

      c.    A. Platschek – card number ending in 71056;

      d.    G. Platschek – card number ending in 71031;

      e.    Abramczyk – card number ending in 71023; and

      f.    Schuck – card number ending in 71049.

104.    A. Platschek was never employed by the Debtor and never provided services to the Debtor.  Upon information and belief, A. Platschek is related to R. Platschek, either by blood or by marriage.

105.    G. Platschek is R. Platschek's wife and was never employed by the Debtor and never provided services to the Debtor.

17

106.    Schuck was never employed by the Debtor and never provided services to the Debtor.

107.    At all relevant times herein, the Debtor did not incur any obligations on the Platinum Accounts.

108.    Although the Debtor never had a credit card or account with American Express, the Debtor made the following transfers to American Express to pay the obligations incurred by the Platinum Account Obligors on the Platinum Accounts within two (2) years of the Petition Date:

| | Platinum Card Account Ending In: | Transfer Date | Amount of Transfer from the Debtor |
|---|---|---|---|
| 1 | 2-73003 | 7/8/2014 | $ 19,249.53 |
| 2 | 2-73003 | 7/14/2014 | $ 39,340.59 |
| 3 | 2-73003 | 9/10/2014 | $ 75,200.00 |
| 4 | 2-74001 | 11/14/2014 | $ 18,951.16 |
| 5 | 2-74001 | 12/30/2014 | $ 7,163.69 |
| | | TOTAL: | $ 159,904.97 |

(collectively, the "Platinum Accounts Two-Year Transfers").

109.    The Platinum Accounts Two-Year Transfers were made to or for the benefit of American Express and the Platinum Account Obligors.

110.    The Platinum Accounts Two-Year Transfers were made with the actual intent to hinder, delay, or defraud some or all of the Debtor's then existing and future creditors.

111.    The Platinum Accounts Two-Year Transfers constitute fraudulent transfers avoidable by the Trustee pursuant to § 548(a)(1)(A) of the Bankruptcy Code and are recoverable from American Express and/or the Platinum Account Obligors pursuant to § 550(a) of the Bankruptcy Code.

112.     As a result of the foregoing, pursuant to §§ 548(a)(1)(A), 550(a), and 551 of the
Bankruptcy Code, the Trustee is entitled to a judgment: (a) avoiding and preserving the Platinum
Accounts Two-Year Transfers; (b) directing that the Platinum Accounts Two-Year Transfers be
set aside; (c) recovering the Platinum Accounts Two-Year Transfers, or the value thereof, from
American Express and/or from the Platinum Account Obligors for the benefit of the Debtor's
Estate; and (d) an injunction against American Express and the Platinum Account Obligors
prohibiting them from further disposing of the property transferred.

**COUNT SIX**
**CONSTRUCTIVE FRAUDULENT TRANSFER**
**U.S.C. §§ 548(a)(1)(B), 550 AND 551**
**(AMERICAN EXPRESS and THE PLATINUM ACCOUNT OBLIGORS)**

113.     The Trustee incorporates all preceding paragraphs as if fully re-alleged herein.

114.     The Platinum Accounts Two-Year Transfers were made on or within two (2)
years of the Petition Date.

115.     The Debtor did not receive reasonably equivalent value in exchange for the
Platinum Accounts Two-Year Transfers.

116.     At the time of the Platinum Accounts Two-Year Transfers, the Debtor was
insolvent, or became insolvent, as a result of the Platinum Accounts Two-Year Transfers.

117.     At the time of the Platinum Accounts Two-Year Transfers, the Debtor was
engaged in a business or a transaction, or was about to engage in a business or a transaction, for
which any property remaining with the Debtor was unreasonably small capital.

118.     At the time of the Platinum Accounts Two-Year Transfers, the Debtor intended to
incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts
matured.

119.    The Platinum Accounts Two-Year Transfers constitute constructively fraudulent transfers avoidable by the Trustee pursuant to §§ 548(a)(1)(B) and 551 of the Bankruptcy Code and are recoverable from American Express and/or the Platinum Account Obligors pursuant to § 550(a) of the Bankruptcy Code.

120.    As a result of the foregoing, pursuant to §§ 548(a)(1)(B), 550(a), and 551 of the Bankruptcy Code, the Trustee is entitled to a judgment: (a) avoiding and preserving the Platinum Accounts Two-Year Transfers; (b) directing that the Platinum Accounts Two-Year Transfers be set aside; (c) recovering the Platinum Accounts Two-Year Transfers, or the value of thereof, from American Express and/or the Platinum Account Obligors for the benefit of the Debtor's Estate; and (d) an injunction against American Express and the Platinum Account Obligors prohibiting them from further disposing of the property transferred.

**COUNT SEVEN**
**CUFTA INTENTIONAL FRAUDULENT TRANSFER**
**11 U.S.C. §§ 544(b)(1), 550(a) AND 551 AND**
**CONN. GEN. STAT. §§ 52-552e(a)(1) AND 52-552h(a)**
**(AMERICAN EXPRESS and THE PLATINUM ACCOUNT OBLIGORS)**

121.    The Trustee incorporates all preceding paragraphs as if fully re-alleged herein.

122.    The Debtor made the following transfers to American Express to pay the obligations incurred by the Platinum Account Obligors on the Platinum Accounts within four (4) years of the Petition Date, as follows:

|   | Platinum Account Ending In: | Transfer Date | Amount of Transfer from the Debtor |
|---|---|---|---|
| 1 | 2-72005 | 3/13/2013 | $ 38,157.00 |
| 2 | 2-72005 | 5/10/2013 | $ 60,000.00 |
| 3 | 2-72005 | 6/17/2013 | $ 38,157.70 |
| 4 | 2-72005 | 9/3/2013 | $ 16,302.21 |
| 5 | 2-72005 | 10/23/2013 | $ 16,226.64 |
| 6 | 2-72005 | 12/12/2013 | $ 5,000.00 |

| 7 | 2-72005 | 3/13/2014 | $ | 78,681.88 |
| 8 | 2-73003 | 3/20/2014 | $ | 300.00 |
| 9 | 2-73003 | 4/11/2014 | $ | 71,345.88 |
| 10 | 2-73003 | 6/13/2014 | $ | 39,340.59 |
| 11 | 2-73003 | 7/8/2014 | $ | 19,249.53 |
| 12 | 2-73003 | 7/14/2014 | $ | 39,340.59 |
| 13 | 2-73003 | 9/10/2014 | $ | 75,200.00 |
| 14 | 2-74001 | 11/14/2014 | $ | 18,951.16 |
| 15 | 2-74001 | 12/30/2014 | $ | 7,163.69 |
| | | **TOTAL:** | **$** | **523,416.87** |

(collectively, the "Platinum Accounts Four-Year Transfers," and together with the Gold Account Four-Year Transfers, the "Four-Year Transfers").

123.    The Platinum Accounts Four-Year Transfers were made to or for the benefit of American Express and the Platinum Account Obligors.

124.    The Platinum Accounts Four-Year Transfers were made with the actual intent to hinder, delay, or defraud some or all of the Debtor's then existing and future creditors.

125.    The Platinum Accounts Four-Year Transfers constituted fraudulent transfers within the meaning of, and in violation of, CUFTA, Conn. Gen. Stat. § 52-552e(a)(1).

126.    As a direct and proximate result of the Platinum Accounts Four-Year Transfers, the Debtor, its Estate, and its creditors have been caused to suffer money damages.

127.    At all times relevant herein, there have been creditors who have held and still hold matured or unmatured unsecured claims against the Debtor that were and are allowable under § 502 of the Bankruptcy Code or that were and are not allowable only under § 502(e).

128.    As a result of the foregoing, the Trustee is entitled to a judgment: (a) avoiding and preserving the Platinum Accounts Four-Year Transfers; (b) directing that the Platinum Accounts Four-Year Transfers be set aside; (c) recovering the Platinum Accounts Four-Year Transfers, or the value thereof, from American Express and/or the Platinum Account Obligors for the benefit

21

of the Debtor's Estate pursuant to 11 U.S.C. §§ 550 and 551 and Conn. Gen. Stat. § 52-552h(a);

and (d) an injunction against American Express and the Platinum Account Obligors prohibiting

them from further disposing of the transferred property.

**COUNT EIGHT**
**CUFTA CONSTRUCTIVE FRAUDULENT TRANSFER**
**CONN. GEN. STAT. §§ 52-552e(a)(2) AND 52-552f(a)**
**(AMERICAN EXPRESS and THE PLATINUM ACCOUNT OBLIGORS)**

129.    The Trustee incorporates all preceding paragraphs as if fully re-alleged herein.

130.    The Platinum Accounts Four-Year Transfers were made on or within four (4)

years of the Petition Date.

131.    The Debtor did not receive reasonably equivalent value in exchange for the

Platinum Accounts Four-Year Transfers.

132.    At the time of the Platinum Accounts Four-Year Transfers, the Debtor was

insolvent, or became insolvent, as a result thereof.

133.    At the time of the Platinum Accounts Four-Year Transfers, the Debtor was

engaged, or was about to engage, in a business or transaction for which any property remaining

with the Debtor was unreasonably small capital.

134.    At the time of the Platinum Accounts Four-Year Transfers, the Debtor intended to

incur, or believed or reasonably should have believed that it would incur, debts that would be

beyond its ability to pay as such debts matured.

135.    The Platinum Accounts Four-Year Transfers constitute fraudulent transfers within

the meaning of, and in violation of, CUFTA, Conn. Gen. Stat. §§ 52-552e(a)(2) and/or 52-

552f(a).

136.    As a direct and proximate result of the Platinum Accounts Four-Year Transfers,

the Debtor, its Estate, and its creditors have been caused to suffer money damages.

137.    As a result of the foregoing, the Trustee is entitled to a judgment: (a) avoiding and preserving the Platinum Accounts Four-Year Transfers; (b) directing that the Platinum Accounts Four-Year Transfers be set aside; (c) recovering the Platinum Accounts Four-Year Transfers, or the value thereof, from American Express and/or the Platinum Account Obligors for the benefit of the Debtor's Estate pursuant to 11 U.S.C. §§ 550 and 551 and state law; and (d) an injunction against American Express and the Platinum Account Obligors prohibiting them from further disposing of the property transferred.

**COUNT NINE**
**UNJUST ENRICHMENT**
**(AMERICAN EXPRESS and THE GOLD ACCOUNT OBLIGORS)**

138.    The Trustee incorporates all preceding paragraphs as if fully re-alleged herein.

139.    American Express and the Gold Account Obligors received a substantial financial benefit from the Gold Account Four-Year Transfers for which they either unjustly did not pay, render services, or otherwise provide consideration to the Debtor to justify such transfers.

140.    The failure of American Express and the Gold Account Obligors to pay or otherwise provide consideration to the Debtor for the benefits conferred upon them was to the detriment of the Debtor, its Estate, and its creditors.

141.    It is contrary to equity and good conscience for American Express and the Gold Account Obligors to retain such benefits.

142.    As a result of the foregoing, the Debtor, its Estate, and its creditors have been injured.

**COUNT TEN**
**UNJUST ENRICHMENT**
**(AMERICAN EXPRESS and THE PLATINUM ACCOUNT OBLIGORS)**

143.   The Trustee incorporates all preceding paragraphs as if fully re-alleged herein.

144.   American Express and the Platinum Account Obligors received a substantial financial benefit from the Platinum Accounts Four-Year Transfers for which they either unjustly did not pay, render services, or otherwise provide consideration to the Debtor to justify such transfers.

145.   The failure of American Express and the Platinum Account Obligors to pay or otherwise provide consideration to the Debtor for the benefits conferred upon them was to the detriment of the Debtor, its Estate, and its creditors.

146.   It is contrary to equity and good conscience for American Express and the Platinum Account Obligors to retain such benefits.

147.   As a result of the foregoing, the Debtor, its Estate, and its creditors have been injured.

**COUNT ELEVEN**
**BREACH OF FIDUCIARY DUTY**
**(WHMC, R. PLATSCHEK, TYTY, and ABRAMCZYK)**

148.   The Trustee incorporates all preceding paragraphs as if fully re-alleged herein.

149.   At all relevant times herein, WHMC, R. Platschek, TYTY, and Abramczyk had a fiduciary duty to the Debtor to act in the Debtor's best interest.

150.   At all relevant times herein, the Debtor placed a unique degree of trust and confidence in WHMC, R. Platschek, TYTY, and Abramczyk, each of whom were under a duty to represent the interests of the Debtor and whom were expected to utilize their superior knowledge, skill, or expertise in representing those interests.

24

151.     Pursuant to the Management Agreement, the Debtor relied upon WHMC, acting by and through R. Platschek, to properly perform all billing, collection and financial management activities concerning the Debtor, including processing and paying all accounts payable, paying all rents, insurance, applicable taxes, operating costs as required by any lease entered into by the Debtor, establishing and maintaining bank accounts on behalf of the Debtor, representing the Debtor in all legal, regulatory and personnel matters, and providing all necessary bookkeeping and accounting for the Debtor's operations.

152.     After the Management Agreement was executed, WHMC, acting by and through R. Platschek, breached its fiduciary duty to the Debtor thereunder by, *inter alia*: (a) failing to keep and maintain records of the Debtor's billing, collection and financial management activities; (b) causing the Debtor to pay, and directing and/or allowing TYTY to transfer funds of the Debtor to pay, debts that were not owed by the Debtor; (c) failing and refusing to provide the Debtor with necessary bookkeeping and an accounting of the Debtor's operations, despite repeated requests from the Debtor that WHMC provide such financial information to the Debtor; (d) causing or allowing the Debtor – or TYTY – to issue numerous checks from the Debtor's checking account for which the Debtor did not have sufficient funds to pay; (e) failing to review and approve each transfer of funds from the Debtor's bank account(s) initiated by TYTY; (f) allowing the Debtor to be sued by creditors and thus needlessly incurring attorney's fees, costs, and interest; (g) allowing TYTY to pay itself, or otherwise transfer the Debtor's funds to TYTY, even though the Debtor had no obligation to pay TYTY for any services rendered by TYTY to WHMC; and (h) failing to properly supervise TYTY, resulting in the failure to pay all monies necessary to discharge the Debtor's obligations to employees and Connecticut taxing authorities.

153.    As a result of WHMC's failure to faithfully and adequately discharge its

obligations under the Management Agreement, and its intentional, reckless or negligent failure to

supervise TYTY in order to ensure that the Debtor's funds were used only for proper purposes,

the Debtor's actual and just debts were not being paid.  Instead, the Debtor's funds were being

transferred to, or for the benefit of, WHMC, R. Platschek, TYTY, and Abramczyk, as well as to

their family, friends, and business associates, including the Gold Account Obligors and the

Platinum Account Obligors.

154.    TYTY owed the Debtor a fiduciary duty to act in its best interests, by virtue of the

fact that WHMC provided TYTY with a signature stamp bearing the name "Donald Griggs" and

authorized TYTY to issue checks from the Debtor's bank account(s) and authorized TYTY to

initiate ACH and wire transfers from the Debtor's bank account(s), including transfers to

WHMC, R. Platschek, and TYTY.

155.     While TYTY was issuing checks and otherwise transferring funds from the

Debtor's bank accounts, TYTY transferred the Debtor's funds to pay debts that the Debtor did

not owe.

156.    As a result of the foregoing, WHMC, R. Platschek, TYTY, and Abramczyk had

control over the Debtor's funds.

157.    WHMC, R. Platschek, TYTY, and Abramczyk utilized and converted the

Debtor's assets for their own benefit, as well as for the benefit of their friends, family, and

business associates.

158.    WHMC, R. Platschek, TYTY, and Abramczyk failed to keep and render clear and

accurate business and financial records of the Four-Year Transfers paid from the Debtor's PUB

Account.

159.     As a result of the foregoing, WHMC, R. Platschek, TYTY, and Abramczyk have breached their fiduciary duties to the Debtor.

160.     As a result of the foregoing breaches of fiduciary duty owed to the Debtor by WHMC, R. Platschek, TYTY, and Abramczyk, the Debtor has incurred damages in an amount to be proven at trial.

**COUNT TWELVE**
**CIVIL THEFT**
**CONN. GEN. STAT. § 52-564**
**(WHMC, GOLDEN LIVING, R. PLATSCHEK, TYTY, ABRAMCZYK,**
**A. PLATSCHEK, G. PLATSCHEK, ROSNER, and SCHUCK)**

161.     The Trustee incorporates all preceding paragraphs as if fully re-alleged herein.

162.     WHMC, Golden Living, R. Platschek, TYTY, Abramczyk, A. Platschek, G. Platschek, Rosner, and Schuck wrongfully utilized the Debtor's assets as described herein for their own benefit and/or the benefit of their friends, family, and business associates.

163.     WHMC, Golden Living, R. Platschek, TYTY, Abramczyk, A. Platschek, G. Platschek, Rosner, and Schuck took or accepted the benefits of the Four-Year Transfers with the intent to deprive the Debtor of its property or to appropriate the Debtor's property for themselves or a third party.

164.     In doing so, WHMC, Golden Living, R. Platschek, TYTY, Abramczyk, A. Platschek, G. Platschek, Rosner, and Schuck wrongfully and took, obtained, withheld, used or accepted the benefits of the Debtor's funds to pay obligations the Debtor did not owe.

165.     WHMC, R. Platschek, Abramczyk, and TYTY wrongfully allowed, and Golden Living, R. Platschek, Abramczyk, A. Platschek, G. Platschek, Rosner, and Schuck wrongfully took, obtained, withheld, used or accepted the benefits of the Four-Year Transfers with the intent

to deprive the Debtor of its property or to appropriate the Debtor's property for themselves or a third party.

166.     The wrongful use of the Debtor's assets constitutes statutory theft and a violation of Conn. Gen. Stat. § 52-564.

167.     As a result of the theft of its property by WHMC, Golden Living, R. Platschek, TYTY, Abramczyk, A. Platschek, G. Platschek, Rosner, and Schuck, the Debtor has incurred damages in an amount to be proven at trial.

**COUNT THIRTEEN**
**CONVERSION**
**(WHMC, R. PLATSCHEK, TYTY, and ABRAMCZYK)**

168.     The Four-Year Transfers constitute the unauthorized assumption and intentional exercise of the right to ownership over the Debtor's funds by WHMC, R. Platschek, TYTY, and Abramczyk, to the exclusion of the Debtor's rights.

169.     The Debtor has been injured as a result of conversion of its property by WHMC, R. Platschek, TYTY, and Abramczyk.

**COUNT FOURTEEN**
**CONNECTICUT UNFAIR TRADE PRACTICES ACT**
**VIOLATION OF CONN. GEN. STAT. § 42-110(B)**
**(WHMC, R. PLATSCHEK, TYTY, and ABRAMCZYK)**

170.     WHMC, R. Platschek, TYTY, and Abramczyk have engaged in a pattern of unfair and deceptive practices calculated to siphon the Debtor's assets for their own benefit, and for the benefit of their family, friends, and business associates.

171.     The acts and practices alleged in this count constitute unfair and deceptive acts and practices in violation of Conn. Gen. Stat. § 42-110b(a) of the Connecticut Unfair Trade Practices Act ("CUTPA").

172.     The acts and practices alleged herein were unfair in that (a) they offended public policy as it has been established by the common law or otherwise or were within at least the penumbra of some common law or established concept of unfairness, (b) were immoral, unethical, oppressive or unscrupulous, and/or (c) caused substantial injury to the Debtor in that the injuries that they caused were substantial, were not outweighed by any countervailing benefits to consumers or competition that they produced, and caused an injury that the Debtor itself could not reasonably have avoided.

173.     The acts and practices alleged in this Count were done in the conduct of the primary trade or business of WHMC, R. Platschek, TYTY, and Abramczyk.

174.     The unfair and deceptive acts and practices of WHMC, R. Platschek, TYTY, and Abramczyk have caused the Debtor to suffer an ascertainable loss of money or property and actual damages and have forced the Debtor and its Estate to expend significant time, legal fees, and other resources.

175.     The acts and practices of WHMC, R. Platschek, TYTY, and Abramczyk alleged in this Count were done with a reckless indifference to the Debtor's rights or were intentional and wanton violations of those rights.

**COUNT FIFTEEN**
**CIVIL CONSPIRACY**
**(WHMC, PLATSCHEK, TYTY, ABRAMCZYK, THE PLATINUM ACCOUNT**
**OBLIGORS, and THE GOLD ACCOUNT OBLIGATORS)**

176.     WHMC, Platschek, TYTY, Abramczyk, the Platinum Account Obligors, and the Gold Account Obligators (collectively, the "Conspirators") conspired and agreed to work together to systematically siphon the Debtor's assets for their own benefit, and for the benefit of their family, friends, and business associates by way of a series of unlawful acts and/or lawful acts undertaken by unlawful means.

29

177.    By virtue of causing or allowing the Debtor to pay the debts of others, by virtue of causing the Four-Year Transfers, and/or by accepting the benefit of the Four-Year Transfers, each of the Conspirators committed at least one act in furtherance of their conspiracy to systematically siphon the Debtor's property for the benefit of themselves or a third party.

178.    The Debtor has incurred damages as a result of the civil conspiracy between and among the Conspirators in an amount to be proven at trial.

**STATEMENT CONCERNING ENTRY OF FINAL ORDERS OR JUDGMENT**

Pursuant to Fed. R. Bankr. P. 7008, Bonnie Mangan, Chapter 7 Trustee of Walnut Hill Inc., hereby consents to entry of final orders or judgment by the Bankruptcy Court.

**WHEREFORE**, the Trustee, Bonnie C. Mangan, respectfully requests that the Court enter judgment in favor of the Trustee and against the Defendants as follows:

1.    Actual and compensatory damages;

2.    Pursuant to 11 U.S.C. §§ 548(a)(1)(A), 548(a)(1)(B), 550(a), 551 and CUFTA: (a) avoidance of all transfers set forth above; (b) an order directing that the transfers set forth above be set aside; and (c) recovery of the transfers set forth above, or the value thereof, from the each of the defendants named in each count for the benefit of the Debtor's Estate;

3.    As to all Counts, money damages;

4.    As to Count TWELVE, treble damages pursuant to Conn. Gen. Stat. § 52-564.

5.    As to Count FOURTEEN,

    a.    a judgment against each defendant pursuant to Conn. Gen. Stat. § 42-110g(a) for the actual damages suffered by the Debtor;

    b.    punitive damages pursuant to Conn. Gen. Stat. § 42-110g(a); and

    c.  the costs of this suit, including reasonable attorneys' fees, expenses, and interest pursuant to Conn. Gen. Stat. § 42-110g(a).

6.      A permanent injunction precluding the Defendants from transferring or disposing of any assets during the pendency of this bankruptcy case;

7.      Disallowance of any claims held by the Defendants and/or their assignees against the Debtor and/or the Estate until the Defendants and/or their assignees satisfy the judgment;

8.      Attorneys' fees;

9.      Interest, pursuant to Conn. Gen. Stat. § 37-3a;

10.    Pre-judgment interest and costs; and

11.    Such other and further relief as this Court deems just and equitable.

Dated at Milford, Connecticut on this 14th day of June, 2018.

BONNIE C. MANGAN,
CHAPTER 7 TRUSTEE OF
WALNUT HILL INC.,

By:  */s/* Lawrence S. Grossman
      Lawrence S. Grossman [ct15790]
      David C. Shufrin [ct29230]
      Joanna M. Kornafel [ct29199]
      HURWITZ, SAGARIN, SLOSSBERG & KNUFF, LLC
      147 North Broad Street
      Milford, CT 06460
      Tel: 203-877-8000/Fax: 203-878-9800
      LGrossman@hssklaw.com
      DShufrin@hssklaw.com
      JKornafel@hssklaw.com